**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| PEARLIE R. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22-cv-1258-STA-jay |
| | ) | |
| | ) | |
| TK ELEVATOR MANUFACTUING | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Pearlie R. Hill filed this action against her former employer TK Elevator Manufacturing, Inc. ("TKE"), for alleged discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; 28 U.S.C. § 1981; and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* "(FMLA"). Defendant has filed a motion for summary judgment. (ECF No. 45.) Plaintiff has filed a response to the motion (ECF No. 52), Defendant has filed a reply to the response (ECF No. 55.) For the reasons set forth below, Defendant's motion is **GRANTED**.

<u>Standard of Review</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court must review all the

evidence and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).   When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.  The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

<u>Statement of Material Facts</u>

Local Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a). Defendant has filed a statement of undisputed facts (ECF No. 45-2), and Plaintiff has filed a response to Defendant's statement of facts as well as her own statement of additional

facts. (ECF Nos. 53-1, 53-2.) Defendant has responded to Plaintiff's additional facts. (ECF No. 56.)

As an initial matter, the Court notes that Defendant has correctly pointed out that Plaintiff's additional statement of facts (ECF No. 53-2) exceeds the five-page limit set out in L.R. 56.1(b). At least some of those facts have already been addressed by the parties, and Defendant has responded to the excess additional facts not already addressed. Because Defendant will not be prejudiced by the Court's consideration of any of the additional facts which are undisputed, the Court will not strike the excess additional facts. However, Plaintiff is cautioned that disregarding the requirements of the Local Rules is not looked on favorably by this Court or any other Court in this District.

Based on the parties' submissions, the Court finds that the following facts are undisputed for purposes of summary judgment, unless otherwise noted.

Defendant TKE operates a manufacturing facility in Middleton, Tennessee.

TKE has written policies that prohibit discrimination, harassment, and retaliation in the workplace.

Plaintiff, a black female, was hired in January 2014 by TKE as a full-time employee, and she worked in a utility position at the Middleton facility during her employment. The composition of this line, on average, consisted of one female employee with the remaining employees being male.

Plaintiff was part of the bargaining unit represented by the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers, Local No. S-251 ("Union"). TKE and the Union are parties to a current collective bargaining agreement ("CBA") that was in effect during Plaintiff's employment.

Article 31 of the CBA contains the Middleton Plant Attendance Policy, and Plaintiff was subject to the terms of that policy while she was employed at TKE. Article 31 applies to employees that are included in the bargaining unit, whether or not they are union members.

Under Article 31, employees receive progressive discipline consisting of a verbal warning, written warning, final written warning, and termination once they reach a certain number of occurrences for absences, early departures, or late arrivals. Article 31 provides that "[o]ccurrences expire twelve (12) months from the date of the incident."[1] Under Article 31, absences which qualify under the FMLA are not to be counted against an employee's attendance record.

Attendance violations are tracked and managed by Human Resources ("HR"), which also determines the level of discipline administered based on the number of occurrences.[2]

Family/medical leave and short-term disability is administered by Hartford, a third-party administrator. Employees had to contact Hartford to request FMLA, and Hartford would advise the employee whether their request for FMLA was approved or not. Much of the information upon which Hartford relies for approvals and denials of FMLA leave or benefits comes from the employee, and some of the information comes from TKE.

Plaintiff received a verbal warning for attendance on January 31, 2020, which she signed, a written warning for attendance on June 23, 2020, which she signed, a final written warning for

---

[1] Plaintiff points out that Article 31 does not include an explicit provision stating that the 12-month expiration of "occurrences from the date of the incident" only applies "provided the employee has 12 months of working time and do not roll off when the employee has not been actively working" as claimed by TKE representatives Edward Sullivan and Churita Butler. The disciplinary action form also merely states that "Occurrences expire 12 months from the date of the occurrence" and does not address whether the twelve-month period is interrupted when an employee is not actively working. The Court need not decide this issue for purposes of deciding the motion for summary judgment.

[2] Plaintiff agrees that this is Defendant's stated policy but disputes that the policy was correctly applied to her.

attendance on July 2, 2020, which she signed, and a termination for violating the attendance policy on July 3, 2020, which was the final step under Defendant's discipline policy.  Plaintiff was terminated on July 15, 2020, for violation of the attendance policy, *i.e.*, accumulation of excessive attendance points.

On July 16, 2020, Plaintiff filed a grievance for "Unjust Discharge" through her Union Representative. Between mid-July and November 2020, Plaintiff did not actively work for TKE while the grievance remained unresolved.

On or about November 16, 2020, TKE and the Union reached an agreement to settle the grievance and reinstate Plaintiff with full seniority subject to a Conditional Reinstatement Agreement ("CRA"). The CRA memorialized the reinstatement and set forth the terms under which Plaintiff was being reinstated pursuant to the settlement of her termination grievance. The CRA was signed by Hill, the Union Representative, and TKE's Manager of Labor Relations Ed Sullivan.

Under the CRA, Plaintiff was to be placed on a 180-day probationary period. During such time "an infraction of any company policy or procedure, and/or section of the Collective Bargaining Agreement (attendance points and related discipline will be per CBA) will result in immediate termination of Ms. Hill's employment." Plaintiff's employment would continue to be subject to the terms of the CBA for "attendance points and related discipline." Around that time, Plaintiff met with multiple TKE agents.  At the meeting, she asked if her "attendance points will continue to roll?" HR Generalist Dejanee Kletke responded by informing Plaintiff that her "points will continue to roll off once you reach [1] year from the date you received a point."[3]

---

[3]  *See infra* note 12.

Plaintiff performed her full-time duties at TKE without issue in early 2021 after being reinstated.

In November 2020, after she returned to work and while working on the paint line, Plaintiff's waist was grabbed by a male coworker named Robert Kessler. According to Plaintiff, Kessler squeezed by her on the line and put his hands on her waist; she told Kessler to ask her to move instead of touching her waist; Kessler never touched her with his hands after she told him this.[4]

After she returned to work in November 2020, Plaintiff committed additional attendance infractions, but she does not remember the number of instances.[5]   On February 22, 2021, Plaintiff was four minutes late to work; she did not call Hartford to request FMLA.  On March 2, 2021, Plaintiff was one minute late to work; she did not call Hartford to request FMLA. On March 4 and 5, 2021, Plaintiff was absent from work and called Hartford requesting FMLA.

Karin  Gibson,  HR  Ops  Specialist  for  TKE,  sent  an  email  to LM.MPLS@HartfordLife.com  on  March  8,  2021,  providing  Plaintiff's  hours  worked  from March 2, 2020, to March 4, 2021, which was below the 1250 hours required to be eligible for FMLA leave.[6]

---

[4] Plaintiff testified that she "told Meeks in November or sometime that Robert Kessler touched her and that Meeks said he would report it but she did not hear anything back." (Pl's Resp. to Def's St. Mat. Fcts. at para. 25, ECF No. 53-1.)  Meeks denies that Plaintiff informed him of the incident in November.  (Def's Resp. to Pl's St. Mat. Fcts. at paras. 64-67, ECF No. 56.) The complaint alleges that Plaintiff told Meeks about the incident on March 30, 2021. (Cmplt. at para. 23, ECF No. 1.) However, the complaint is somewhat ambiguous and may be referencing a second incident that occurred in March 2021, as discussed below.

[5] Plaintiff describes her infractions as "inconsequential incidents."  (Pl's Resp. to Def's St. Mat. Fcts. at para. 30, ECF No. 53-1.)

[6] Plaintiff does not dispute this statement but contends that the representations made by Gibson to Hartford did not accurately reflect the amount of hours she actually worked during the pertinent period. (*Id.* at para. 34.) *See also infra* note 15.

On March 11, 2021, Plaintiff left work early and called Hartford requesting FMLA. Plaintiff was approved for said leave by HR and no occurrence was documented. That is, no disciplinary action form reflects an assessed occurrence for this incident.

On March 12, 2021, Plaintiff left work early and did not call Hartford requesting FMLA. Plaintiff was initially approved for said leave by HR, and she was not assessed an occurrence on a disciplinary action form.  HR's approval of the leave request was based on the assumption that Plaintiff would be eligible for FMLA leave.

Although Plaintiff applied for FMLA leave to cover her absences on March 4 and 5, 2021, as well as an early departure on March 11, her FMLA request was denied by Hartford on March 11, 2021, and a notification letter was sent by Hartford to Plaintiff stating that she was ineligible because she had not worked 1,250 hours in the proceeding 12-month period.[7]

On March 15, 2021, Plaintiff was five minutes late for work and did not call Hartford requesting FMLA leave.[8]

On that same date, Plaintiff met with HR representatives Tonya Acred,[9] DeJanee Kletke, and Churita Butler to discuss the denial of her request for FMLA. They reiterated that she was not eligible for FMLA because she worked fewer than 1,250 hours in the prior 12-month period,

---

[7] Plaintiff does not dispute these facts but states that she was not issued an "occurrence" or disciplinary action form for either of these absences during her employment. She argues that, even if Defendant had counted these incidents pursuant to Article 31, she still would not have met the threshold for termination on March 30, 2021. (*Id.* at para. 38.)

[8]  According to Plaintiff, she was late because a train was blocking the entrance. She states that, under Article 31, "any tardiness caused by the train blocking the road for a long period of time" will not be counted as an occurrence. (*Id.* at para. 37.)  However, Article 31 actually states that "Any tardiness caused by the train blocking the road for a long period of time which affects more than two (2) employees and is approved on the day the employee is tardy will not be counted."

[9] Acred was the liaison between TKE and Hartford for FMLA Leave, Short-Term Disability, and Workers' Compensation Claims. (Acred Decl., ECF No. 45-6.)

as required for FMLA eligibility.[10] Acred testified that "I was involved in a meeting with Pearlie Hill on March 15, 2021, with Churita Butler and DeJanee Kletke present where Hartford's denial of Hill's FMLA request was discussed. DeJanee led the meeting and explained that Hartford had determined that Plaintiff was not eligible for FMLA because she had not met the law's requirement of 1250 hours worked in the preceding twelve-month period."

On March 23, 2021, Acred emailed Travis Bailey, a representative for Hartford, to confirm that the FMLA leave denials for Plaintiff and another employee, Blair Wells, were not going to be overturned by Hartford, since TKE was ready to move forward with their terminations.[11]

In the 12-month period preceding her FMLA request, Plaintiff actively worked full-time for Defendant between: (1) March 4, 2020 – July 15, 2020; and (2) November 17, 2020 – March 2021, although Defendant notes that she did not work 1,250 hours in this period so as to be eligible for FMLA leave.

On the morning of March 30, 2021, shortly before HR met with Plaintiff to advise her of her termination for attendance policy violations, Plaintiff took her supervisor Brian Meeks aside and informed him that she felt uncomfortable around her co-worker Robert Kessler.  According to Plaintiff, on March 29, Kessler pulled a frame out of a crate, and the frame hit her on her backside; Kessler apologized to her. Plaintiff did not know if Kessler's action was intentional or an accident. Meeks prepared a statement in an email based on the information provided by Plaintiff, and Plaintiff, the union steward, and Meeks signed the statement. The email referenced

---

[10] The FMLA defines an "eligible employee" as "an employee who has been employed" for at least twelve months and at least 1,250 hours. 29 U.S.C. § 2611(2)(A).

[11] Plaintiff contends that this statement is an "inaccurate representation" of the contents of the email. However, the Court has reviewed the email and finds no inaccuracy.  (Pl's Resp. to Def's St. Mat. Fcts. at para. 41, ECF No. 53-1; Email, No. 45-6.)

the November incident when Kessler squeezed by Plaintiff on the line and put his hands on her waist as he went by her. Plaintiff said that the statement was accurate.

Meeks took Plaintiff's complaint to Churita Butler in HR as soon as Plaintiff and the union steward signed it. Meeks spoke with Kessler and Corey Finger, the lead man on the paint line, after Plaintiff made her complaint. Neither Finger nor Kessler confirmed Plaintiff's complaint.

Meeks' email statement was drafted at 7:48 a.m. Less than two hours later, TKE terminated Plaintiff. Plaintiff's employment was terminated on the ground that she had violated Defendant TKE's attendance policy. Plaintiff signed the attendance discipline form on March 30, 2021, indicating that she was terminated. She did not say anything in response to being told by Butler that she was being terminated. Plaintiff did not file a grievance over her March 30, 2021 termination.

Plaintiff relies on the two incidents involving Robert Kessler which were set forth in the email statement prepared by Meeks on March 30, 2021, to support her claim of sexual harassment. She alleges no other instances of sexual harassment. According to Plaintiff, she was terminated for making a complaint about harassment by Kessler, and this is the basis for her retaliation claim. She also states that she was denied FMLA leave after making her complaint.

No member of management or HR employee of TKE said anything negative to Plaintiff about applying for FMLA leave.

Ed Sullivan, Manager of Labor Relations, made the decision to terminate Plaintiff in March 2021, and previously in July 2020.

Kessler was terminated on April 14, 2021, for violation of the Attendance Policy. Blair Wells was also terminated. Both employees were Caucasian males.

Plaintiff understood that, under the Attendance Policy, if she missed work, left early, or arrived late, she could get "points" unless the absence was covered by FMLA or "something else."[12]

Plaintiff was approved for intermittent FMLA multiple times during her employment.[13] She was specifically granted FMLA leave for the following periods: (1) August 30, 2019 - May 26, 2020; (2) June 5, 2020 - June 10, 2020; and (3) June 20, 2020 - August 29, 2020.

TKE issued Plaintiff multiple disciplinary action forms for alleged attendance infractions ("occurrences") in the 2020 calendar year.

Article 31 details the steps of progressive discipline outlined in the attendance policy based on an accumulation of documented "occurrences." However, on November 17, 2020, Plaintiff returned to work under a Conditional Reinstatement Agreement without back pay and on a 180-day probationary period. She needed only one occurrence to be terminated and was not subject to further progressive discipline while on probation.

"Absences are each considered one occurrence; tardiness and early departure are each one-half an occurrence."  Article 31 specifically states that a tardy arrival, early departure, or other shift interruption of two (2) hours or less is considered a one-half occurrence and that a tardy arrival, early departure, or other shift interruption of more than two (2) hours is considered

---

[12]  TKE's representatives Churita Butler and Edward Sullivan testified that "points" and "occurrences" are used interchangeably in the discipline policy while Plaintiff counters that the discipline policy in Article 31 does not reference "points." This appears to be a difference without a distinction.

[13] Three kinds of leave are available to employees with a serious health condition: (1) one block of leave of twelve weeks or fewer; (2) intermittent leave, which means "leave taken in separate periods of time due to a single illness or injury ... and may include leave of periods from an hour or more to several weeks"; and (3) reduced leave schedule, a plan under which the employer reduces the employee's normal work hours, usually to a part-time basis. 29 U.S.C. §§ 2612(a)(1), 2611(9); 29 C.F.R. §§ 825.800, 825.203(a).

a full occurrence. "For an absence of multiple consecutive days for the same illness or injury, the first five days of the absence will be one (1) occurrence."

Plaintiff was approved for intermittent FMLA over certain periods of time, but Hartford had to approve requests to use FMLA on particular days or partial days. In early March 2021, Plaintiff applied for intermittent FMLA leave. Although Plaintiff believed that she was eligible for FMLA leave at that time, Hartford ultimately determined that she was not eligible. Neither the CBA nor the CRA address eligibility for FMLA leave.

Plaintiff has no first-hand knowledge to support her allegation that "Defendant intentionally provided Hartford inaccurate information regarding Plaintiff's intermittent FMLA requests."[14]

Defendant uses a disciplinary action form ("Positive Progressive Attendance Discipline") which includes sections identifying the date of the disciplined occurrence and identifying the disciplinary step which the employee is on based on occurrence.  There are also signature lines for the employee, union representative, and TKE agents.

Plaintiff was not issued contemporaneous discipline for attendance or absence-related infractions in March 2021 on its "Positive Progressive Attendance Discipline" form because her request for FMLA leave was pending.

---

[14]  Plaintiff does not dispute this statement but claims, without any citation to the record, that "[d]ocuments revealed in discovery reveal to her counsel that Defendant provided inaccurate information about her hours to the Hartford." (*Id.* at para. 70.) A "properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation, or unsubstantiated assertions;" the non-moving party must cite to the record for each specific claim they believe demonstrates a genuine dispute of material fact. *Bradley v. Wal-Mart Stores E., LP*, 587 F. App'x 863, 866 (6th Cir. 2014) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Under Article 31, each occurrence must be documented and delivered to the employee. Article 31 states "All warnings will be delivered by the Production Leader (supervisor), Production Manager, and/or the HR Manager."

Between November 17, 2020, and March 29, 2021, Defendant did not issue Plaintiff a single disciplinary action form for an occurrence.

Between March 15 and 29 of 2021, Plaintiff worked full-time days on all scheduled shifts but was five minutes late on March 15, 2021, which was an occurrence. She was not issued a disciplinary action form during this period, *i.e.*, March 15-29, 2021. Defendant again clarifies that, with a final written warning, Plaintiff needed only one occurrence to be terminated and was not subject to further progressive discipline while on probation. Plaintiff was issued a disciplinary action form for an occurrence on March 15, 2021, when she was terminated.

<u>Analysis</u>

<u>Non-Retaliation Claims</u>

In her response, Plaintiff has stated that she does not oppose Defendant's motion as to her claims of sex discrimination, race discrimination, sexual harassment, and racial harassment under Title VII or race discrimination and racial harassment under § 1981. (Resp. at p. 18 n. 8, ECF No. 52.). Therefore, summary judgment will be entered in favor of Defendant on these claims.

Likewise, Plaintiff has not addressed Defendant's motion for summary judgment on her FMLA interference claim. Moreover, Plaintiff has stated an intent to abandon all non-retaliation claims. (*Id.*) Therefore, summary judgment will be entered for Defendant on Plaintiff's FMLA interference claim. Accordingly, the Court will look only at Plaintiff's retaliation claims.

Retaliation Under Title VII and § 1981

Title VII forbids an employer from "discriminating against" an employee because the employee "has opposed" unlawful employment practices. 42 U.S.C. § 2000e-3(a). Section 1981 also encompasses claims of retaliation. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008) A retaliation claim under § 1981 is analyzed in the same manner as a retaliation claim under Title VII. *See Johnson v. United Parcel Serv., Inc.,* 2023 WL 2290275, at *2 (M.D. Tenn. Feb. 28, 2023) (citing *Boxill v. O'Grady,* 935 F.3d 510, 520 (6th Cir. 2019) (noting that the elements of a retaliation claim under § 1981 are the same as those under Title VII)).

In the present case, Plaintiff contends that she has shown direct evidence of retaliation.[15] In support of her contention, she has alleged that at the termination meeting on March 30, 2021, Churita Butler informed her that Ed Sullivan said that he decided to fire her because she was "causing problems because of complaining" about harassment and discrimination. Defendant has objected to this testimony as "hearsay within hearsay." The Court agrees with Defendant that the testimony is inadmissible.

This issue has been discussed by several other district courts who have reached the same conclusion.  For example, in *Colter v. Bowling Green-Warren Cnty. Reg'l Airport Bd.*, 2019 WL 2714500 (W.D. Ky. Apr. 3, 2019), the Court rejected the plaintiff's attempt to use double hearsay to prove his age discrimination claim.  In that case, the plaintiff wanted to testify about what a co-worker told him about age-related statements made by Robert Barnett, his former supervisor, in order to prove the truth of the matter within the statement. The Court found that

---

[15] Direct evidence is "evidence, which if believed, *requires* the conclusion that unlawful retaliation was a motivating factor in the employer's action." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (emphasis in original). Direct evidence "proves the existence of a fact without any inferences or presumptions." *Davis v. Metro Parks & Recreation Dep't*, 854 F. App'x 707, 714 (6th Cir. 2021) (citation omitted).

these statements and all others offered by the plaintiff in the absence of those that heard Barnett's

statements could not overcome the double hearsay "hurdle" and must be excluded. *Id.*, at *2.

> However, Defendants point out an issue with Colter's proffered evidence of age
> discrimination — all of Barnett's alleged comments about Colter's age are
> hearsay, and therefore, not admissible at trial. If Colter personally heard Barnett
> make discriminatory comments, it is likely that Colter could present those
> comments at trial because statements by an opposing party are not hearsay under
> Fed. R. Evid. 801(d)(1). However, in this case there are two levels of hearsay.
> Colter heard from other coworkers who heard Barnett's comments about Colter's
> age. Yet, neither the groundkeeper nor the airplane mechanic who allegedly heard
> Barnett's comments have been deposed or submitted affidavits to support
> Barnett's direct evidence theory. Thus, there is no evidence currently before the
> Court that could overcome this double hearsay issue to be admissible at trial.
> **Furthermore, the Sixth Circuit has "repeatedly held that isolated ambiguous
> comments out of context do not constitute direct evidence of age
> discrimination."** *Loper v. Computer Network Tech. Corp.*, 128 F. Supp. 2d 1061,
> 1065 (E. D. Mich. 2001) (collecting cases). For these reasons, Defendants are
> entitled to judgment as a matter of law as it applies to the direct evidence theory
> of age discrimination.

2019 WL 2714500, at *4 (emphasis added). *See also Williams v. E. I. DuPont de Nemours &*

*Co.*, 2008 WL 11387054, at *7 (M.D. Tenn. Apr. 18, 2008) ("Williams testified that Horsley [a

co-worker] informed him on January 19 that Solarz [the department manager] told Horsley that

Williams' pay would not be affected in any way, but this testimony is rank double hearsay and it

is not sufficient to generate a genuine issue of material fact for trial. *See* Fed. R. Civ. 56(e)(1)

(evidence proffered on summary judgment must be admissible in evidence).")

This issue was also addressed in *Gatti v. Smith*, 2018 WL 467789, at *12–13 (N.D. Ohio

Jan. 18, 2018).

> Defendants move for summary judgment on Plaintiff Davis' claims, asserting that
> he lacks admissible evidence to support his claims of retaliation for being in the
> union and supporting Defendant Smith's political opponent. They contend that
> double hearsay and inadmissible hearsay bar this Court from considering Plaintiff
> Davis' evidence of retaliation consisting of Plaintiff Stauffer telling him that
> supervisors Stassinis and Klejka told Plaintiff Stauffer that Plaintiff Davis "should
> watch his back" and Plaintiff Davis was "next on the list." The Court agrees that
> these statements are inadmissible hearsay and double hearsay because, as held

above, statements made by the supervisors that are not within the scope of their job duties and responsibilities constitute inadmissible hearsay under Rule 801(d)(2)(D). Moreover, these statements are double hearsay as Plaintiff Davis indicated that Plaintiff Stauffer told him what the supervisors told Plaintiff Stauffer.

Defendants also assert that Plaintiff Davis relies on additional inadmissible hearsay to support his claims of harassment that he and his crews were required to stay out longer and were not allowed to take breaks.  Defendants point to Plaintiff Davis' testimony that the superintendent at the time told him that he had to leave his crews out longer, the superintendent required supervisors under him not to allow Plaintiff Davis' crew to take any breaks, and the superintendent told supervisors to "keep their eye" on Plaintiff Davis. Defendants note that Plaintiff Davis admitted that the only reason he "knows" that the superintendent at the time told other supervisors to watch him was because those supervisors told him this, which is inadmissible hearsay. The Court again agrees that the supervisors' statements to Plaintiff Davis are inadmissible hearsay.

*Id.*, at \*12–13 (record citations omitted).

Accordingly, this Court likewise finds that the statements proffered by Plaintiff as direct evidence of discrimination, *i.e.*, statements that Sullivan allegedly made to Butler who then repeated them to Plaintiff, are inadmissible under the Federal Rules of Evidence as double hearsay.

Absent direct evidence of retaliation, as in this case, a plaintiff must use the *McDonnell Douglas* framework for proving retaliation through circumstantial evidence. *McDonnel-Douglas Corp. v. Greene*, 411 U.S. 792 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1994).  *See A.C. v. Shelby Cty. Bd. Educ.*, 711 F.3d 687, 697 (6th Cir. 2013) (explaining that the *McDonnell Douglas/Burdine* framework applies only when retaliation plaintiffs rely on circumstantial evidence to prove their claims as with discrimination claims). Under this framework, if Plaintiff establishes a prima facie case of retaliation, Defendant must then articulate a legitimate, nondiscriminatory reason for its employment decision. *Hicks*, 509 U.S. at 506-07.   If Defendant articulates a legitimate,

nondiscriminatory reason for the decision to terminate Plaintiff, any presumption of discrimination or retaliation drops from the case, and Plaintiff must prove by a preponderance of the evidence that Defendant's stated reason was pretextual. *Id.* at 507. Although the burden of production shifts, the ultimate burden of persuading the trier of fact that Defendants intentionally discriminated or retaliated against Plaintiff remains at all times with Plaintiff. *Burdine*, 450 U.S. at 256.

A plaintiff may make a prima facie case of retaliation by showing that (1) she engaged in protected activity, (2) the activity was known to the defendant, (3) the plaintiff was subjected to a materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action. *See Boshaw v. Midland Brewing Co.,* 32 F.4th 598, 605 (6th Cir. 2022); *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010). The Sixth Circuit has explained that:

> Establishing an adverse employment action is "less onerous" than in a discrimination action, *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595–96 (6th Cir. 2007), but proving causation is harder because retaliation must be the but-for cause of the adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Temporal proximity on its own is usually not sufficient to establish causation, *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020), but can be if the adverse action was "taken just days or weeks from when the employer learns of the employee's protected activity." *George* [*v. Youngstown State Univ.*, 966 F.3d 446, 460] (6th Cir. 2020).

Defendant argues that it is entitled to judgment as a matter of law because Plaintiff has not established a prima facie case of retaliation. Defendant specifically argues that Plaintiff cannot show a causal connection between the protected activity (complaints of sexual harassment) and her termination.

As evidence of a causal connection, Plaintiff first attempts to rely on the alleged statements made by Sullivan that she also pointed to as direct evidence of retaliation. However, as discussed above, those statements are double hearsay and are inadmissible as evidence.

Next, Plaintiff attempts to rely on the temporal proximity between her complaints and her termination. Plaintiff states that she engaged in "protected activity" other than complaining of sexual harassment and requesting to take FMLA leave, such as calling Defendant's hotline to complain of racial discrimination. (Resp. p. 13, ECF No. 52.) According to Plaintiff, "[t]he other three (3) protected acts must be inferred as known by Defendant because the facts inherently assert dissemination to authorized agents of TK Elevator [in human resources, management, and its company hotline]." (*Id.*)  The Court cannot draw such an inference without a citation to the record, nor can it find that knowledge of any other complaints by Plaintiff can be imputed to TKE's decisionmakers without evidence of such. *See*, *e.g.*, *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 482 (6th Cir. 2008) (explaining that, to establish knowledge, a plaintiff must provide sufficient evidence to allow an inference that her employer knew of her protected activity when it took the adverse action).

Therefore, to determine if Plaintiff may rely on temporal proximity to support the causation prong of her prima facie case, the Court will consider only her sexual harassment complaints in November and on March 30 and the meeting on March 15 in which she contends she complained of retaliation and discrimination.[16]

Despite Defendant's denial that Plaintiff complained to Meeks, her supervisor, in November 2020, the Court will accept that she did make a complaint to him for the purpose of

---

[16] Plaintiff also points out that the time period between her requests for FMLA leave and her termination is less than one month. (Resp., p. 14, ECF No. 52.)  Plaintiff's FMLA retaliation claim is discussed below in a separate section of this order.

deciding this motion. The Court in *Williams v. Memphis Light, Gas & Water*, 2024 WL 3427171 (6th Cir. July 16, 2024), considered whether a four-month interval as in this case (November – March) was sufficient to establish the causation element of a prima facie case.

> Williams fails to show a causal connection between the HR report and her suspension without pay. Williams emailed HR about Newbern's behavior in April 2018, and the company suspended her in August of the same year; a four-month gap. We have held that "temporal proximity considered with other evidence of retaliatory conduct is sufficient" to defeat summary judgment on the causation element of a prima facie case. *Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 364 (6th Cir. 2001). And "very close" temporal proximity can suffice on its own. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). But Williams cannot rely on temporal proximity here. The four-month gap is too lengthy to independently establish causation. *E.E.O.C. v. Ford Motor Co.*, 752 F.3d 634, 648 (6th Cir. 2014). And she does not identify "other evidence" in the record that ties Newbern's actions in the intervening four-month period to her eventual suspension without pay. The district court did not need to search the record for such evidence, and we have no obligation to do so on appeal. *See Sumpter v. Wayne County*, 868 F.3d 473, 489–90 (6th Cir. 2017); Fed. R. Civ. P. 56(c)(3).

2024 WL 3427171, at *9. Plaintiff, as in *Williams*, has presented no admissible "other evidence" to tie Defendant's actions in November with her eventual termination.[17]

As for Plaintiff's sexual harassment complaint on March 30, 2021, the day that she was terminated, Defendant correctly points out that Tonya Acred emailed Hartford on March 23, 2021, to confirm that the requests for FMLA made by Plaintiff and employee Blair Wells had been denied by Hartford since TKE wanted to move forward with their terminations for violations of the attendance policy. A causal connection cannot be shown when a materially adverse action takes place before the protected activity. *See Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 571 (6th Cir. 2009) (concluding that a plaintiff had failed to establish a causal

---

[17] "Beyond temporal proximity, other indicia of retaliatory conduct would include evidence that the plaintiff was treated differently, either less positively or more negatively, than similarly situated employees who had not exercised Title VII rights, or evidence that the plaintiff was subjected to closer disciplinary scrutiny after exercising Title VII rights." *Novotny v. Elsevier*, 291 F. App'x 698, 705 (6th Cir. 2008) (quoting *Evans v. Prospect Airport Servs., Inc.*, 286 F. App'x 889, 895 (6th Cir. 2008)).

connection between informal complaints and his termination when the conduct resulting in his termination occurred before most of his complaints and his employer was already investigating his conduct when he complained); *Evans v. Walgreen Co.*, 813 F. Supp.2d 897, 927-28 (W.D. Tenn. 2011) (finding that the plaintiff had not offered sufficient evidence to raise an inference that her protected activity was the likely reason for the alleged adverse actions because she was under investigation for violation of the employer's workplace violence policy when she engaged in the protected activity). Because the decision to move forward with Plaintiff's termination occurred prior to her March 30, 2021 complaint, she cannot show a causal connection between her March 30 complaint and her termination.

Finally, Plaintiff attempts to rely on racial discrimination and sexual harassment complaints she says she made during her March 15, 2021 meeting with Defendant's representatives. However, these "complaints" were made after she was told that her FMLA leave had been denied.  ("At the meeting, Plaintiff was told that her request was denied because she had not worked a sufficient number of hours in the preceding calendar year for FMLA eligibility. In response, Plaintiff complained that the FMLA denial was an act of targeted retaliation for: (1) making multiple recent complaints about race discrimination against black women on the paint line to the company hotline; (2) complaining about sexual harassment in November 2020, which Hill expressed was discriminatorily disregarded to protect a white male coworker; and (3) expressing her intent to take FMLA leave." (Resp., p. 8, ECF No. 52 (record citations omitted))).

Moreover, as discussed above, the Court has declined Plaintiff's invitation to "infer" that Defendant knew of the calls she made to the company hotline, and, thus, she cannot rely on the calls as evidence of retaliation; nor can she rely on the November 2020 complaint (assuming without deciding that one was made) to support the causation element. The Court finds that

Plaintiff has failed to show the requisite causal connection between any complaints she made and her termination, and, thus, she has failed to establish a prima facie case of retaliation.

In the alternative, Defendant contends that, even if Plaintiff has established a prima facie case, it has articulated a legitimate non-discriminatory reason for her termination that is not a pretext for retaliation. Defendant's burden at this stage is "merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009); *see also McNeail–Tunstall v. Marsh USA*, 307 F.Supp. 2d 955, 967 (W.D. Tenn. 2004) (same). "Indeed, the employer's burden is light: it is 'satisfied if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons.'" *Brown v. Ohio State Univ.*, 616 F. Supp.2d 740, 750 (S.D. Ohio 2009) (quoting *Bd. of Trs. v. Sweeney*, 439 U.S. 24, 25 n. 2 (1978)), *aff'd*, 385 F. App'x 486 (6th Cir. 2010).

Defendant's stated reason for Plaintiff's termination is that she violated the company's attendance policy. This reason is sufficient to satisfy Defendant's burden of production. Therefore, the burden shifts back to Plaintiff to show pretext - *i.e.* that Defendant's "reason" was fabricated to conceal a retaliatory motive. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007)).

Plaintiff "can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen*, 580 F.3d at 400. To ultimately prevail, the plaintiff must prove that the real reason for the employer's action was retaliation. *Griffin v. Finkbeiner*, 689 F.3d 584, 594 (6th Cir. 2012) (citing *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 522 (6th Cir. 2002)); *see also Chen*, 580 F.3d at 400 n. 4 (advising courts to avoid formalism in the application of this test and to not "lose sight of the

fact that at bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination").

However, the plaintiff employee is not required to carry this ultimate burden at the summary judgment stage.  Instead, she "need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rational." *Griffin v. Finkbeiner*, 689 F.3d 584, 594 (6th Cir. 2012) (citing *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 522 (6th Cir. 2002)).  "[S]ummary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation." *Chen*, 580 F.3d at 400 n. 4 (citation omitted).

As evidence of pretext, Plaintiff continues to insist that Defendant provided inaccurate documentation to Hartford concerning her eligibility for FMLA leave.  However, as discussed above, Plaintiff has pointed to nothing in the record to show that the documentation was, in fact, inaccurate. Even if some of the information was inaccurate, absent evidence that Defendant intentionally provided inaccurate information to Hartford in an effort to retaliate against her for making complaints of sexual harassment, Defendant was entitled to rely on Hartford's determination that she was not eligible for FMLA leave. *See generally*, *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 997 (8th Cir. 2011) (determining that the "evidence confirms a good-faith basis for [the plaintiff's] termination, and any failure to conduct a more searching inquiry is not evidence of pretext); *Richards v. Wells Real Est. Funds, Inc.*, 2007 WL 3002071, at *1 (11th Cir. Oct. 16, 2007) ("[I]in employment discrimination cases, the jury need not determine that the employer was correct in its assessment of the employee's performance, only [that] the employer had a good faith basis for believing the performance to be unsatisfactory and that the reason was not mere pretext.")  Once it was determined that Plaintiff's absences in March 2021 were not

covered by the FMLA, she was in violation of the attendance policy and the CRA. This was a legitimate non-retaliatory reason for her termination.

Moreover, two white employees, Kessler and Wells, were also terminated for violating the attendance policy at or around the same time that Plaintiff was terminated. There is no evidence that either Wells or Kessler engaged in any protected activity prior to their terminations.  Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, the Court finds that Plaintiff has not pointed to admissible evidence in the record showing that Defendant's proffered reason for her termination was pretextual.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims of retaliation under Title VII and § 1981.

Retaliation Under the FMLA

Plaintiff also contends that she was retaliated against for exercising her rights under the FMLA. The FMLA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). However, an employee who fails to meet the eligibility requirements for FMLA cannot state a claim for retaliation under the statute. *Banerjee v. Univ. of Tennessee*, 2019 WL 7283128, at *3 (E.D. Tenn. Jan. 16, 2019), *aff'd*, 820 F. App'x 322 (6th Cir. 2020) ("Plaintiff fails to state a claim for retaliation under the FMLA because she was not an eligible employee when she requested leave. An eligible employee is one who has been employed by the employer for at least 12 months and worked at least 1,250 hours with the employer during the previous 12-month period.") When "a plaintiff does not qualify as an 'eligible employee,' the court lacks jurisdiction to decide the FMLA case." *Humenny v. Genex Corp.*, 390 F.3d 901, 905 (6th. Cir. 2004). This requirement applies to retaliation claims as well to other claims under the FMLA. *Id.*

In this case, Hartford determined that Plaintiff was not eligible for FMLA leave because she had not worked the required 1,250 hours "during the 12–month period immediately preceding the commencement of the leave." *See* 29 C.F.R. § 825.110(a)(2). Plaintiff appears to argue that she should have been credited with service hours between her first termination in July 2020 and her reinstatement the following November. To the contrary, an employee who was terminated and then subsequently reinstated as part of a grievance settlement between the plaintiff and the defendant and who did not receive an award of back pay, as in this case, fails to meet the eligibility requirement for FMLA leave unless she has actually worked 1,250 hours in a twelve-month period; that is, she cannot be credited with the hours she did not work while her termination was being grieved. *See Ouellette v. Fountainview of Monroe*, 2013 WL 5423084, at *7 (E.D. Mich. Sept. 26, 2013) (rejecting the plaintiff's argument that, even though she did not receive an award of back pay, "the Arbitrator's Award of reinstatement, with full seniority and benefits, qualifies her hours not worked during her time off following her October 2008 termination as 'service hours' for purposes of calculating her FMLA eligibility.") *C.f. Ricco v. Potter*, 377 F.3d 599, 601, 604 (6th Cir. 2004) (accepting the plaintiff's argument that if an "employee is awarded back pay, accompanied by equitable remedies (*i.e.* full back pay with seniority and benefits, or a 'make whole' remedy), the hours the employee would have worked if not for the action which resulted in the back pay period, [should be] counted as work hours for the 1250 work hour eligibility requirement under the Family Medical Leave Act (FMLA).")[18] In this case, it is undisputed that Plaintiff did not receive an award of back pay.

---

[18] It is clear from *Ricco*, and cases that interpret it, that the touchstones for defining hours not actually worked as "hours of service" are (1) a determination that the employer acted unlawfully in causing the plaintiff's inability to serve and (2) that the plaintiff have been awarded remuneration, or back wages, as part of a "make whole" remedy for the employer's unlawful conduct. *See Mutchler v. Dunlap*

Because Plaintiff was not eligible for FMLA leave in that she did not work the requisite number of hours in a twelve-month period, she cannot maintain a claim for FMLA retaliation, and Defendant is entitled to judgment as a matter of law on this claim.

For all these reasons, Defendant's motion for summary judgment is **GRANTED**. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

IT IS SO ORDERED.

**s/ S. Thomas Anderson**
S. Thomas Anderson
United States District Judge

Date:  September 23, 2024

---

*Memorial Hosp*., 485 F.3d 854, 859 (6th Cir.2007) ("Of course, the critical point in *Ricco* was that the employer *wrongfully terminated* the plaintiff, [and] the plaintiff received a make-whole award.") (emphasis in original). In this case, there is neither. In this case, there was no "make-whole" award, Plaintiff was expressly not awarded back pay and there was no finding that her employer engaged in unlawful behavior.

*Ouellette*, 2013 WL 5423084, at *8.